WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Davis, | No. CV-23-00016-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| City of Glendale, et al., | |
| Defendants. | |

Pending before the Court is Defendant City of Glendale's motion to dismiss Counts One and Two of the first amended complaint ("FAC"). (Doc. 7.) Also pending is Plaintiff's "Motion to Allow Discovery Prior to Filing Response and Opposition to Defendant City of Glendale's Motion to Dismiss Counts One and Two." (Doc. 8.) For the following reasons, Plaintiff's motion is denied and Defendant's motion is granted.

**BACKGROUND**

The FAC alleges as follows. On March 9, 2021, Maxwell Davis ("Maxwell") entered a convenience store "pretending to be armed" and demanded money. (Doc. 1-4 ¶ 7.) The clerk "refused to comply" and Maxwell[1] "walked out of the store." (*Id.* ¶ 10.) Witnesses inside the store called the police. (*Id.* ¶ 11.) "Glendale Police Officers" responded and located Maxwell walking down a nearby sidewalk. (*Id.* ¶¶ 12-13.) Upon seeing the officers, Maxwell "began running away." (*Id.* ¶ 13.) Maxwell hid between two

---

[1] The FAC states that "Ray" walked out of the store. No one named "Ray" is otherwise discussed in the FAC, and it appears from context that Plaintiff must have meant "Maxwell," not "Ray."

parked vehicles in a trailer community's parking lot.  (*Id.* ¶ 14.)  The officers "drew their weapons immediately, taking no steps [and] making no efforts to diffuse the situation." (*Id.* ¶ 15.)  The officers "talked to" Maxwell "from close range" and told him to "get down." (*Id.* ¶ 16.)  The officers "then immediately fired their weapons multiple times, striking and killing [Maxwell]."  (*Id.* ¶ 17.)  "Other than a split second before the shooting, none of the Police Officers attempted any de-escalation or 'crisis intervention' techniques or methods[] that typically are taught to all police officers," including slowing down to "elongate the encounter," establishing a "rapport," communicating "empathy," stating they are there to "help," and speaking in a "calm demeanor."  (*Id.* ¶ 25.)

On May 6, 2022, Maxwell's father, Plaintiff Joseph Davis, filed a complaint against Defendant in Maricopa County Superior Court.  (Doc. 1-9 at 6-16.)  Plaintiff brings suit in his individual capacity, as the personal representative of Maxwell's estate, and on behalf of statutory beneficiary Vicki Davis (Maxwell's mother).  (*Id.* at 6.)  The complaint included two counts: (1) "Wrongful Death Negligence and Gross Negligence"; and (2) "Wrongful Death Negligent Hiring, Training, Supervision and Retention."  (*Id.*)

On August 1, 2022, Defendant was served.  (Doc. 1-5 at 2.)  The parties agreed to extend Defendant's response deadline to September 21, 2022.  (Doc. 1-9 at 41.)

On September 13, 2022, Defendant's counsel reached out to Plaintiff's counsel to indicate Defendant's belief that the complaint was "deficient in two respects":

- First, Count One raises a negligent-use-of-force claim. Such claims are not cognizable under Arizona law. *See Ryan v. Napier*, 245 Ariz. 54, 60, ¶ 21 (2018). This includes claims alleging that an officer was negligent in his pre-shoot evaluation of the circumstances and in deciding to shoot. *Id.* at 60-61, ¶ 22; *see also Weber v. City of Kingman*, No. 1 CA-CV 21-0063, 2022 WL 1468246, at *2 (Ariz. App. May 10, 2022) (holding that negligence claims grounded in "preshooting tactical decisions" are precluded by *Ryan*). Each of your sub-theories fall into that category: "none of the responding Officers utilized proper de-escalation or 'crisis intervention' techniques or methods" and "failed to call for the assistance of other officers who are better trained in proper de-escalation or 'crisis intervention' techniques"; "the officers failed to take proper cover"; "the officers … fail[ed] to warn Maxwell before fired [sic] their guns"; and "failure to use less-lethal responses before resorting to deadly force".

- Second, there are no factual allegations supporting Count Two (negligent hiring, training, supervision, and retention), only legal conclusions. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008) ("[M]ere

conclusory statements are insufficient to state a claim upon which relief can be granted."). Paragraphs 58-59 do not factually allege how the City was negligent, and Paragraphs 31, 35, 40, 45 inconsistently allege that the training was not negligent.

(Doc. 1-9 at 40.)  Defendant's counsel stated an intention to file a motion to dismiss both counts, offered Plaintiff's counsel "an opportunity to consider withdrawing or amending the Complaint," and asked to be informed as to how Plaintiff intended to proceed.  (*Id.*)

On September 15, 2022, Defendant's counsel sent a follow-up email and Plaintiff's counsel indicated a need for more time to consider Defendant's arguments.  (*Id.* at 34-39.)  The parties agreed to extend Defendant's response deadline to October 21, 2022, to give Plaintiff's counsel time to consider how to proceed.  (*Id.*)

On September 29, 2022, and then again on October 11, 2022, Defendant's counsel asked if Plaintiff's counsel would "have time to review and respond to [Defendant's] inquiry by October 7."  (*Id.*)  Plaintiff's counsel did not respond.  (*Id.*)

On October 12, 2022, the parties' attorneys spoke on the phone, Plaintiff's counsel rejected the contention that the FAC was deficient, and Plaintiff's counsel then memorialized his position in an email to Defendant's counsel.  (*Id.* at 35, 44.)

On October 21, 2022, Defendant filed a motion to dismiss the complaint in its entirety.  (*Id.* at 23-29.)  (The content of the October 21, 2022 motion to dismiss is functionally identical to the currently pending motion to dismiss—more on that later.)  The third sentence of the motion to dismiss states that despite being offered "the opportunity to amend, Plaintiff elected to stand by his allegations."  (*Id.* at 23.)

On October 25, 2022, the state court denied the motion to dismiss (*id.* at 30) for failure to comply with Rule 12(j) of the Arizona Rules of Civil Procedure, which requires a "good faith consultation certificate," defined by Rule 7.1(h) as "a separate statement certifying and demonstrating that the movant has tried in good faith to resolve the issue by conferring with—or attempting to confer with—the party or person against whom the motion is directed," either "in person or by telephone."  The state court ordered Defendant to file an answer and added that Defendant was "not precluded from filing a [motion for

1    judgment on the pleadings] raising the same issues."  (Doc. 1-9 at 30.)

2            On November 3, 2022, Defendant filed a motion for reconsideration, documenting

3    the attempts to confer and the actual conferral that took place before the motion to dismiss

4    was filed, explaining that Defendant's counsel "inadvertently failed to attach the Certificate

5    of Conferral," and citing Arizona law suggesting that failure to attach a certificate of

6    conferral was harmless where the nonmoving party had the opportunity to respond and had

7    not indicated an intention to amend.  (*Id.* at 31-45.)

8            On November 7, 2022, the state court denied the motion for reconsideration without

9    explanation.  (*Id.* at 46.)

10           On November 21, 2022, Defendant filed an answer (Doc. 1-6) and a motion for

11   judgment on the pleadings (Doc. 1-8), which was essentially identical to its earlier motion

12   to dismiss.

13           On December 15, 2022, Plaintiff filed the FAC.  (Doc. 1-4.)[2]  The FAC added a

14   third count: "Defendant Officers Violated Decedent's Fourth Amendment Right To Be

15   Free From the Unreasonable Use of Force and Are Liable Pursuant to 42 U.S.C. § 1983."

16   The FAC is otherwise identical to the original complaint, aside from fixing a problem with

17   the numbering of the paragraphs in the original complaint and amending ¶ 59 of the

18   complaint (¶ 66 of the FAC), such that the general and special damages sought for

19   Defendant's alleged negligent hiring, training, supervising, and/or retaining of the officers

20   include amended categories of harm.

21           On January 4, 2023, Defendant timely removed this action.  (Doc. 1.)

22           On January 11, 2023, Defendant filed the pending motion to dismiss Counts One

23   and Two of the FAC (Doc. 7), which, as noted, is functionally identical to its October 21,

24   2022 motion to dismiss and its November 21, 2022 motion for judgment on the pleadings.

25           The deadline for Plaintiff to respond to the motion to dismiss was January 25, 2023.

26   _____

27   [2]      Defendant states, in the notice of removal, that the November 21, 2022 motion for
     judgment on the pleadings "is still pending."  (Doc. 1 at 2.)  However, this motion became
28   moot upon the filing of the FAC.  *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002,
     1008 (9th Cir. 2015).  Defendant acknowledged, in its notice of pending motion, that the
     motion is moot and need not be resolved.  (Doc. 5.)

1   LRCiv 7.2(c).  Plaintiff did not respond to the motion to dismiss by this deadline.

2   Five days after the deadline, on January 30, 2023, Plaintiff filed the pending motion

3   to allow discovery.  (Doc. 8.)[3]

4   On February 13, 2023, Defendant filed a response opposing Plaintiff's motion to

5   allow discovery.  (Doc. 9.)

6   Plaintiff did not file a reply.

7   **DISCUSSION**

8   I.   Plaintiff's Motion To Allow Discovery

9   Plaintiff asserts that "extrinsic evidence . . . was relied upon and utilized in the

10   preparation of [the FAC]," and "[b]ecause the extrinsic evidence exits [sic] and was utilized

11   in the preparation of the complaint, this court should now treat Defendant's Motion to

12   Dismiss as a Motion for Summary Judgment and govern said motion by Rule 56(f), which

13   allows for the continuation of plaintiff's Response until such time as plaintiff has been

14   allowed to seek production of the discovery necessary to oppose said motion."  (Doc. 8 at

15   4-5.)

16   This argument is unavailing.  Rule 12(d) of the Federal Rules of Civil Procedure

17   states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings

18   are presented to and not excluded by the court, the motion must be treated as one for

19   summary judgment under Rule 56."  By its plain terms, Rule 12(d) applies only when

20   matters outside the pleadings are presented "on a motion."  It does not apply when matters

21   outside the pleadings are presented in a *complaint*, and then a motion is brought challenging

22   the sufficiency of the complaint.  At any rate, anything included in the complaint (or the

---

23   [3]   The title of this filing, "Motion to Allow Discovery Prior to Filing Response and

24   Opposition to Defendant City of Glendale's Motion to Dismiss Counts One and Two," is
     ambiguous.  It is unclear whether Plaintiff intended the first instance of the word "and" to

25   conjoin "motion" and "opposition" or to conjoin "response and opposition."  Under the
     first reading, Plaintiff intended this filing to serve as a motion, or, in the alternative, as an

26   opposition to the motion to dismiss.  The problem with this reading is that the filing
     contains no argument whatsoever as to why the motion to dismiss should be denied.  Under

27   the second reading, this filing serves only one purpose—it is a motion to allow discovery
     before filing a "response and opposition" at a later time.  Although "response and

28   opposition" is redundant ("response *in* opposition" would make more sense), the content
     of the filing suggests that this is what the title meant.

- 5 -

FAC) necessarily becomes a matter that is within the pleadings.

Plaintiff does not identify any matter outside the pleadings presented in Defendant's motion to dismiss, and indeed, there is none. Thus, Plaintiff's request to convert the motion to dismiss into a motion for summary judgment and permit discovery pursuant to Rule 56(d)—misidentified in Plaintiff's motion as Rule 56(f)—is entirely groundless.

To the extent Plaintiff's position is that he should be allowed conduct additional discovery before responding to the motion to dismiss because he is entitled to "the opportunity and ability to conduct . . . discovery in this matter to fortify and support Counts One and Two" (Doc. 8 at 3), this misapprehends how the pleading process works. As the Supreme Court has noted, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Appellant argues that the district court should not have dismissed its claims without permitting discovery. It seeks permission to conduct discovery prior to the filing of any amendment which might be authorized by this Court. As Gallo points out, Rutman's position is unsupported and defies common sense. The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. . . . [I]f the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility.") (citations and internal quotation marks omitted).

II.     Defendant's Motion To Dismiss

As noted, Plaintiff failed to timely respond to Defendant's motion to dismiss. Plaintiff's motion for discovery can be construed as implicitly seeking an extension of the already-lapsed deadline to respond to the motion to dismiss. Such a request is governed by Rule 6(b)(1)(B), which requires the party belatedly seeking an extension of time to establish that its failure to act was "because of excusable neglect." Here, Plaintiff did not

even acknowledge the missed deadline, let alone explain the reason for his failure to timely act and establish that the reason constitutes excusable neglect.  As such, there is no basis for extending the response deadline.

Because Defendant's motion to dismiss is unopposed (apart, perhaps, from the now-denied motion to conduct discovery), the Court could grant it summarily pursuant to LRCiv 7.2(i), which provides that if the opposing party "does not serve and file the required answering memorandum" to a pending motion, "such non-compliance may be deemed a consent to the . . . granting of the motion, and the Court may dispose of the motion summarily."  "Failure to follow a district court's local rules is a proper ground for dismissal."  *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).

However, there are alternatives to summarily disposing of a motion, including, for example, "a formal reprimand, imposition of costs or attorney fees, or an adjudication of the motion without the benefit of plaintiffs' arguments in opposition."  *Wystrach v. Ciachurski*, 267 F. App'x 606, 608 (9th Cir. 2008).  Under the circumstances, the Court considers adjudication of the motion without the benefit of Plaintiff's arguments in opposition to be the most appropriate course of action.

### A.     **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013).

Legal conclusions couched as factual allegations are not entitled to the presumption of truth.  *Iqbal*, 556 U.S. at 679-80 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Taking as true all of the well-pleaded factual allegations, there must be "more than a sheer possibility" that a defendant is liable for the claim to be "plausible." *Id.* at 678.

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law . . . operating on the assumption that the factual allegations in the complaint are true." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

B.    **Count One**

Count One of the FAC is labeled "Wrongful Death Negligence and Gross Negligence." (Doc. 1-4 at 5.) Plaintiff alleges that the officers who shot and killed Maxwell negligently made a "decision not to utilize de-escalation techniques and methods," which "violated their department's own policies" and the officers' "training." (*Id.* ¶ 37.) Plaintiff similarly asserts that the officers negligently "failed to take proper cover" (*id.* ¶ 42), "fail[ed] to warn Maxwell before fired [sic] their guns" (*id.* ¶ 46), failed to try "less-lethal means" of resolving the "potentially dangerous confrontation" (*id.* ¶ 50), and that Defendant "is vicariously liable" for the officers' negligence via the doctrine of respondeat superior.

Under Arizona law, "negligence and intent are mutually exclusive grounds for liability," such that "if a defendant acts with the intent to cause a harmful or offensive touching (battery), that same act cannot constitute negligence." *Ryan v. Napier*, 425 P.3d 230, 236 (Ariz. 2018). Nor can negligence liability "result from a law enforcement officer's 'evaluation' of whether to intentionally use force against another person." *Id.* "An actor's internal evaluation about whether to use force and the decision to do so are not 'acts' and therefore cannot, by themselves, constitute negligence." *Id.* at 237.

In *Ryan*, a driver swerved and nearly hit a police officer who was driving in the opposite lane. *Id.* at 233. The officer activated his siren and flashing lights, made a U-

turn, and pursued the driver, who did not stop until other deputies, who were called in for assistance, placed traffic spikes in the driver's path.  *Id.*  The officer shouted to the driver to show his hands and throw out his car keys.  *Id.*  The driver did not respond.  *Id.*  After being warned about a police dog, the driver ran over the traffic spikes, hopped a curb, and stopped.  *Id.*  Then he staggered from the car and walked around the back, while leaning on the car for support.  *Id.*  The deputy warned the driver to stop or he would be bitten by the police dog.  *Id.*  The driver did not immediately stop, and the deputy released the dog "the instant before" the driver placed his hands on the top of the car.  *Id.*  It turned out that the driver "was experiencing a severe hypoglycemic event" and "lacked cognitive function to understand what was happening or respond to police commands."  *Id.* at 234.  The driver sued, bringing only a negligence claim based on the deputy's decision to release the dog. *Id.*  The trial court denied a defense motion for summary judgment, ruling that the plaintiff "could pursue a claim for 'negligent use of force' despite [the officer's] intentional decision to release [the dog] against [the plaintiff]."  *Id.*  A jury awarded damages and the court of appeals affirmed but the Arizona Supreme Court reversed, holding that "negligent use of intentionally inflicted force" is not a cognizable claim.  *Id.* at 236.  The court reasoned that the deputy's "act," which was "the sole cause of [the plaintiff's] injuries," was his "intentional release" of the dog.  *Id.* at 237.  The deputy's "internal evaluation of whether to release [the dog] and his decision to do so was part and parcel of his intent to inflict harmful or offensive contact."  *Id.*  The court noted that "permitting negligence liability to rest on an officer's internal evaluation of the need for intentionally inflicted force could permit plaintiffs to 'plead around' statutory provisions that apply only to intentional tort claims."  *Id.*

Here, the allegations, taken as true, establish that the officers' intentional act of shooting to kill was the sole cause of Maxwell's death.  The officers' internal evaluation of whether to shoot and their decision to take that course of action were "part and parcel" of their intent.  Such an internal evaluation will always necessarily involve rejecting other potential actions.  Every decision represents infinite other decisions not made.  Although

the FAC frames the negligence as omissions (failure to act in various specified ways) leading up to the intentional act, each omission is a course of action the officers opted not to take in favor of the action they did take. To conclude otherwise would allow any intentional act to be coupled with a negligence action because no matter what the circumstances surrounding an act, there will always be something else that could have been done first or instead.

Indeed, *Ryan* favorably cited a Nebraska Supreme Court decision in which officers fatally shot a burglary suspect, "[t]he operative complaint alleged that negotiation, nonviolent de-escalation techniques, and conflict resolution techniques" should have been employed, and the plaintiff asserted a negligence claim based on various specified failures to act under a state statute that did "not apply to any claim arising out of a battery." *Britton v. City of Crawford*, 803 N.W.2d 508, 511-13 (Neb. 2011). The *Britton* court held that the suit was barred:

> While other factors may have contributed to the situation which resulted in Jesse's death, but for the battery, there would have been no claim. No semantic recasting of events can alter the fact that the shooting was the immediate cause of Jesse's death and, consequently, the basis of Britton's claim.

*Id.* at 518.

In a recent unpublished decision, the Arizona Court of Appeals relied on *Ryan* and *Britton* to conclude that where "the ultimate cause" of death is an officer's "intentional decision to shoot," acts and omissions that constitute "pre-shooting tactical decisions" "give rise exclusively to a claim for battery," not negligence. *Weber v. City of Kingman*, 2022 WL 1468246, *2-3 (Ariz. Ct. App. 2022).

"To be clear, plaintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory." *Ryan*, 425 P.3d at 238. For example, if an officer accidentally drops a gun that discharges, causing injury or death from the errantly discharged bullet, a negligence claim may be appropriate. But here, no inferences from the factual allegations in the FAC could support the contention that the officers' shooting and

- 10 -

killing Maxwell was unintentional.[4]

C.     **Count Two**

Count Two of the FAC is labeled "Wrongful Death Negligent Hiring, Training, Supervision and Retention."  (Doc. 1-4 at 10.)  Plaintiff alleges that Defendant:

> [N]egligently hired, trained, supervised and/or retained the officers involved in the subject incident by:
>
> a.   Implementing, maintaining and tolerating policies, practices and customs which contributed to the illegal and negligent actions of the officers . . . ;
>
> b.   Hiring the officers without reasonably investigating or adequately determining their propensity for the type of improper conduct which they committed against Plaintiff . . . ;
>
> c.   Failing to adequately train or supervise the officers . . . ;
>
> d.   Failing to adequately discipline, demote and/or terminate the officers for any improper conduct prior to the incident at issue . . . [.]

*Id.* ¶ 65.

Defendant argues that "[a]s a threshold matter, Count Two is contingent on Count One," quoting *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. App. 2004), for the proposition that "[i]f the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee." (Doc. 7 at 6.)  However, the FAC contains a Fourth Amendment excessive force claim pursuant to 42 U.S.C. § 1983, which is not challenged in the motion to dismiss, and the allegations in the FAC, taken as true, establish the underlying tort of battery, though no claim for battery was brought.  Moreover, "[w]hen the coordination of an entire group of employees is the alleged cause of harm to a third party, the principal may logically be held directly liable

---

[4]     The Arizona Supreme Court mentioned two cases involving "discrete acts of negligent conduct preceding the use of force": *Reed v. District of Columbia*, 474 F. Supp. 2d 163, 174 (D.D.C. 2007), in which a "misperception of fact" preceded the decision to shoot, and *Hernandez v. City of Pomona*, 51 Cal. Rptr. 3d 846, 859-61 (Ct. App. 2006), in which an officer's pre-shooting conduct "created the situation justifying" the shooting. *Ryan*, 425 P.3d at 238.  The court did not determine "whether Arizona would recognize negligence claims like [those] ones" because those cases were "inapposite." *Id.*  Those cases are inapposite here, too.  The FAC alleges no facts that support the inference that the officers misperceived a fact or that, through separate negligent acts, the officers' conduct created a situation justifying the shooting.  To the extent the failure to engage in the mitigation strategies advocated in the FAC could be argued to "create" such a situation, the Court does not believe that Arizona would recognize such a claim, as discussed above.

for negligent supervision of employees who dutifully carry out a bad policy devised by the principal." *Ferreira v. Arpaio*, 2017 WL 6554674, *6 (D. Ariz. 2017).

Nevertheless, Count Two fails on the merits because the allegations are wholly conclusory. They are broad, boilerplate allegations entirely lacking specificity. The FAC provides nothing more than a cursory, overgeneralized assertion that a number of unnamed officers were hired or trained or supervised or retained negligently—with no supporting facts alleged as to the officers' hiring, training, supervision, or retention—and that Defendant has been "[i]mplementing, maintaining and tolerating" some unspecified "practices and customs" and failed to "adequately discipline, demote and/or terminate" the unnamed officers for "any" unspecified "improper conduct" before the events at issue. (Doc. 1-4 ¶ 65.) In short, the allegations here lack a factual basis and "are not entitled to the presumption of truth." *Iqbal*, 556 U.S. at 679-80. *See also Baker v. Tevault*, 2021 WL 1171492, *8 (D. Ariz. 2021) ("As with his negligent hiring assertions, Baker may expect, through discovery, to identify prior instances in which Tevault has been accused of excessive use of force and/or other misconduct during arrests, but the Complaint is currently devoid of any factual bases plausibly supporting the assertions of multiple prior violations, which appear to be based on mere speculation, not on specific facts. Apart from these suppositions, Baker provides no facts from which to infer that the City knew of and negligently failed to address a need for Tevault to receive additional supervision or training prior to the events alleged in this action. Nor does he allege any facts regarding the supervision or training Tevault received to show that the City's supervision and training or lack thereof were negligent. Accordingly, Baker fails to state a negligent hiring, supervision, and training claim against the City . . . ."); *Watchman-Moore v. United States*, 2018 WL 4522925, *7 (D. Ariz. 2018) ("Plaintiffs' conclusory allegations are insufficient to state a claim for negligent supervision, retention, or hiring. Plaintiffs do not identify any supervisor who was allegedly negligent in his or her supervision or decision to hire or retain [certain individual defendants]. Similarly, Plaintiffs do not allege any facts that would make it plausible on its face that the United States had any knowledge that they those

1    individuals were not competent in their duties . . . .").

2          D.   **Dismissal Without Leave To Amend**

3          For the reasons discussed above, Counts One and Two of the FAC are dismissed.

4    The dismissal is without leave to amend as to those claims.  Since September 13, 2022,

5    Plaintiff has been aware of Defendant's rationale for challenging the legal sufficiency of

6    those claims.  (Doc. 1-9 at 40.)  Defendant's briefing on this matter has been included in

7    three dispositive motions—one denied on a technicality, one rendered moot by the filing

8    of the FAC, and now the one resolved in this order.  The legal deficiencies existed in the

9    original complaint, and although Plaintiff filed an FAC adding a new count, Plaintiff made

10   no attempt to alter the allegations in Counts One and Two.  Although Plaintiff's counsel

11   indicated in an October 12, 2022 email that he and his client did "not agree" with

12   Defendant's position as to the sufficiency of these two claims (*id.* at 44), no explanation

13   was offered as to the grounds for disagreement and Plaintiff forfeited the opportunity to

14   make an argument in opposition by failing to file a response to the pending motion to

15   dismiss.   Indeed, Plaintiff's motion for discovery seems to concede that Plaintiff is

16   unable—at least without using the discovery process as a fishing expedition—to amend the

17   FAC to add factual allegations that would be sufficient to address the shortcomings

18   identified by Defendant.  (Doc. 8 at 6, emphasis added ["The anticipated discovery is

19   expected to illuminate the practices and procedures generally of the defendant police

20   department as well as the specific facts as they related to the unknown/unnamed police

21   officers involved. *Only extensive discovery mandated by this court will yield this necessary*

22   *and crucial information required to defend [against] a Motion to Dismiss . . . .*"].)  Granting

23   leave to amend is unnecessary and would be futile under these unusual circumstances.  *Cf.*

24   *Rutman Wine Co.*, 829 F.2d at 738.

25          …

26          …

27          …

28          …

- 13 -

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to allow discovery (Doc. 8) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss (Doc. 7) is **granted**.  Counts One and Two of the FAC are **dismissed without leave to amend**.

Dated this 18th day of August, 2023.

_____
Dominic W. Lanza
United States District Judge